UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TANJENIK BYRD and
TYREANA EDMONDS,

                Plaintiffs,

          -v-                  5:23-CV-390

TOWN OF DEWITT, TOWN OF
DEWITT POLICE DEPARTMENT,
DEWITT POLICE OFFICER
COREY BUYCK, and DEWITT
POLICE OFFICER RORY SPAIN,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:              OF COUNSEL:

MILLS LAW GROUP, PLLC      JASPER LEE MILLS, III, ESQ.
Attorneys for Plaintiffs
99 Pine Street, Suite 204
Albany, NY 12207

JEFFREY S. SHELLY, ESQ.      JEFFREY S. SHELLY, ESQ.
Attorneys for Plaintiff
300 Tamarack
Summit, NY 12175

SUGARMAN LAW FIRM LLP     PAUL V. MULLIN, ESQ.
Attorneys for Defendants       BRITTANY LEE HANNAH, ESQ.
211 West Jefferson Street      CORY J. SCHOONMAKER, ESQ.
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

**<u>DECISION and ORDER</u>**

## I. <u>INTRODUCTION</u>

Plaintiffs Tanjenik Byrd ("Byrd") and Tyreana Edmonds ("Edmonds") have filed this 42 U.S.C. § 1983 action alleging defendants the Town of Dewitt (the "Town"), the Town's Police Department, Police Officer Corey Buyck ("Officer Buyck"), and Police Officer Rory Spain ("Officer Spain") violated their civil rights by, *inter alia*, falsely arresting them as they tried to exit a Wal-Mart retail store in the Village of East Syracuse, situated in the Town of DeWitt.[1]

Plaintiffs' eight-count proposed[2] amended complaint asserts § 1983 claims against Officer Buyck and Officer Spain for unlawful seizure (Count One), excessive force (Count Two), false arrest (Count Three), false imprisonment (Count Four), assault (Count Five), and battery (Count Six); a § 1983 claim against Officer Buyck, Officer Spain, and the Town for malicious prosecution (Count Seven); and a § 1983 claim for municipal liability against the Town pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (Count Eight).

On May 15, 2023, defendants moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiffs' complaint in its entirety. Dkt. No. 10. Plaintiffs opposed and cross-moved to amend. Dkt. Nos. 20–22. Both

---

[1] Plaintiffs initially named as a defendant the "Village of East Syracuse," Dkt. No. 1, but later voluntarily dismissed all of their claims against that defendant-entity, Dkt. Nos. 28, 30.

[2] For reasons discussed *infra*, plaintiffs' proposed amended complaint, Dkt. No. 21-2, will be considered the operative pleading for this motion practice.

parties replied.  Dkt. Nos. 25, 31.  The cross-motions have been fully briefed

and will be considered on the basis of the submissions without oral argument.

## II.  <u>BACKGROUND</u>

On July 4, 2021, Byrd and Edmonds, two Black women, went shopping

with their children and nephew at a Wal-Mart retail store in the Town of

DeWitt.  Proposed Am. Compl. ¶¶ 3–4, 9–10.  Inside the store, the family was

"approached by a group of females who had previously attempted to assault

Byrd."  *Id*. ¶ 10.  According to the proposed amended complaint, "[t]his group

of females became aggressive, and after a brief encounter, Byrd and Edmonds

[ ] attempt[ed] to leave the store."  *Id*. ¶ 11.

The proposed amended complaint alleges that Officer Buyck and Officer

Spain intercepted plaintiffs as they attempted to exit the store.  Proposed

Am. Compl. ¶¶ 12–13.  According to plaintiffs, defendants immediately tried

to place them under arrest and "proceeded to forcibly slam" both women to

the ground.  *Id*.  When plaintiffs objected to the officers' behavior, defendants'

conduct escalated.[3]  *Id*. ¶ 13.  Plaintiffs were arrested and charged with one

or more crimes, which were later dismissed in December of 2022.  *Id*. ¶ 18.

---

[3]  For instance, plaintiffs allege that Byrd "was visibly pregnant" at the time and "was experiencing a high-risk pregnancy."  Proposed Am. Compl. ¶ 14.  Even so, the proposed complaint alleges that defendants "dragged" Byrd and Edmonds across the floor, causing Byrd to suffer "internal bleeding" and other injuries.  *Id*. ¶¶ 14–15.  Plaintiffs further allege defendants "pummeled and violently punched" Edmonds "in the throat and face."  *Id*. ¶ 15.  Finally, plaintiffs allege that Byrd "became partially disrobed" during the "fracas," and was then "paraded through the store" by defendants, which caused her to suffer "additional embarrassment and humiliation."  *Id*. ¶ 16.

On January 20, 2023, plaintiffs, through their counsel, used New York State's electronic filing system to file a civil complaint in Supreme Court, Onondaga County.  Ex. A to Schoonmaker Decl., Dkt. No. 10-2.  Just like their proposed amended complaint in this federal case, plaintiffs' state-court complaint named as defendants the Town, the Town's Police Department, Officer Buyck, and Officer Spain.[4]  *Id*.  And just like their proposed amended complaint in this federal case, plaintiffs' state-court complaint alleged that Officer Buyck and Officer Spain subjected them to excessive force during a false arrest at a Wal-Mart retail store in DeWitt on July 4, 2021.  *Id*.

On February 21, 2023, defendants moved in Supreme Court, Onondaga County to dismiss plaintiffs' state-court complaint.  Ex. B to Schoonmaker Decl., Dkt. No. 10-3.  There, defendants argued that: (a) plaintiffs had failed to serve a summons with their complaint in violation of certain state-law civil procedure requirements; and (b) plaintiffs' claims were untimely because they were filed beyond the one-year and ninety-day limitations period.  *Id*.

Plaintiffs did not oppose defendants' motion to dismiss in the state-court action.  Ex. B to Schoonmaker Decl., Dkt. No. 10-3.  Instead, plaintiffs filed this § 1983 action on March 28, 2023.  Dkt. No. 1.  Two days later, on March 30, 2023, Onondaga County Supreme Court Justice Gerard J. Neri granted

---

[4] This state-court pleading also named as a defendant the Village of East Syracuse.

defendants' unopposed motion and dismissed plaintiffs' state-court complaint "with prejudice."  Ex. B to Schoonmaker Decl., Dkt. No. 10-3.

## III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV.  <u>DISCUSSION</u>

The central premise of defendants' motion to dismiss this action is that the doctrine of *res judicata*; *i.e.*, claim preclusion, bars plaintiffs from relitigating

in this federal-court action a second lawsuit based on the exact same set of facts that were presented in the state-court action. That turns out to be an interesting legal question. But there are a few procedural issues to resolve beforehand.

## A. The Proposed Amended Complaint

The first issue is which pleading should be considered for the purpose of analyzing defendants' motion to dismiss.

Where, as here, the time in which to amend the pleading as of right has expired,[5] Rule 15 of the Federal Rules of Civil Procedure states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1)–(2).

Rule 15 goes on to state that "[t]he court should freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), but "it is well established that leave to amend a complaint need not be granted where amendment would be futile," *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

As relevant here, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. Civ. P.

---

[5] Plaintiffs had twenty-one days after defendants served their 12(b) motion in which to amend as of right. FED. R. CIV. P. 15(a)(1)(B). Although the Court later extended that deadline to June 19, 2023, Dkt. No. 19, plaintiffs did not file their cross-motion until June 20, 2023, Dkt. No. 22.

But the timing does not alter the analysis. *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304 (2d Cir. 2020) (approving of lower court's consideration of proposed pleading against motion to dismiss where plaintiff amended as of right).

12(b)(6)." *Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 358 (N.D.N.Y. 2017) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2001)).

Consequently, when a party cross-moves to amend in response to the filing of a motion to dismiss, district courts often streamline their analysis with a time-saving strategy: they simply evaluate the pending motion to dismiss in light of the facts alleged in the proposed amended pleading. *See, e.g.*, *Morris*, 268 F. Supp. 3d at 358.

If the facts alleged in the proposed amended pleading would be insufficient to pass muster under Rule 12(b)(6), then a cross-motion to amend based on those facts can safely be denied as "futile." Indeed, our Circuit has recently endorsed this efficient practice as a "sound approach that promotes judicial economy by obviating the need for multiple rounds of briefing." *Pettaway*, 955 F.3d 299, 304 (2d Cir. 2020).

To be sure, this is not always the right analytical technique. For instance, it might be inappropriate if the proposed amendment names new defendants or asserts distinct claims based on different or additional facts. *See, e.g.*, *New Oriental Enter., PTE, Ltd. v. Mission Critical Sols., LLC*, 2021 WL 930616, at *2 (S.D.N.Y. Mar. 11, 2021) (collecting cases). Under those circumstances, the better course of action is likely to permit the amendment and then invite another round of pre-answer briefing.

But those concerns are inapplicable here. In their proposed amendment, plaintiffs abandoned an emotional-distress claim and recharacterized their claim for *respondeat superior* liability by formulating it as a *Monell* claim against the Town. *Compare* Compl. at Dkt. No. 1-2, *with* Proposed Am. Compl. at Dkt. No. 21-2. Importantly, however, plaintiffs have not added new defendants or tried to add any set of facts unrelated to the July 4, 2021 incident at the Wal-Mart retail store; *i.e.*, the same incident they alleged in their original pleading.

Equally important, the existing named defendants have also had an opportunity to respond to the proposed amended pleading—they filed a reply in opposition to plaintiffs' cross-motion to amend. Defs.' Reply, Dkt. No. 25. Accordingly, the proposed amended complaint will be considered the operative pleading for purposes of evaluating defendants' motion to dismiss.

### B. The Police Department

This threshold conclusion about which pleading to consider for the purpose of the motion to dismiss gives rise to a second housekeeping issue. In the original complaint, plaintiffs named as a defendant the "Town of Dewitt Police Department."

But the proposed amended complaint eliminates this defendant. This is because, as plaintiffs recognize in their own briefing, a § 1983 claim against this entity-defendant would be redundant of a *Monell* claim against the Town

itself.  FED. R. CIV. P. 17(b) (explaining capacity of an entity to sue or be sued is governed by state law); *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (concluding that police department lacks separate identity under New York law).

Why mention this discrepancy?  A review of the Court's docket report for this action shows that the "Town of Dewitt Police Department" is still listed as a named defendant.  But as noted *supra*, the proposed amended complaint abandons any claims against this defendant.  And as explained *supra*, even if plaintiffs had not voluntarily eliminated this defendant from the caption, the Police Department would still be subject to dismissal because it is redundant of the Town.  Accordingly, the Clerk of Court will be directed to terminate the "Town of Dewitt Police Department" from this action.

### C.  <u>Service of Process</u>

This leads to a third, unrelated issue.  In their reply, defendants contend that plaintiffs failed to properly serve the first complaint on them.  Defs' Reply, Dkt. No. 25 at 3–4.[6]  Defendants acknowledge that they did not raise this issue in their moving papers.  *Id*.  But they have "request[ed] leave to amend their pending motion to include this ground."  *Id*. at 4.  As defendants explain, the "defect in service was not discovered" because plaintiffs failed to

---

[6]  Pagination corresponds to CM/ECF.

comply with the five-day time limit for filing proofs of service under General Order 25.  *Id*.

Upon review, defendants' request to amend their motion will be denied without prejudice.  As defendants note, a certified mailing is not one of the enumerated options available under the relevant Federal Rules of Civil Procedure.  FED. R. CIV. P. 4(e)(2)(A)–(C).  Nor does a mailing comport with the methods of service that can be borrowed from state law.  FED. R. CIV. P. 4(e)(1); *see also Cassano v. Altshuler*, 186 F. Supp. 3d 318, 321 (S.D.N.Y. 2016); *Kennedy v. Peters*, 2023 WL 5977237, at *2 (N.D.N.Y. Sept. 14, 2023).

Even so, there is a strong federal policy in favor of resolving disputes on the merits.  Consequently, as long as "it appears that proper service may still be obtained," *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972), the right remedy is typically to direct the plaintiff to re-serve the pleading.

That is the right remedy in this case.  After all, defendants were on notice of this action—they appeared through counsel.  Since at least that time, they have received notifications of filings through the Court's electronic docketing system.  This includes notice of the proposed amended complaint, which was filed with plaintiffs' cross-motion to amend.  And defendants were able to respond in opposition to that cross-motion.  So while defendants might have identified a technical defect in service, they have not really articulated any prejudice that might flow from that error.

In short, if plaintiffs' cross-motion for leave to amend is granted, either in whole or in part, plaintiffs will be directed to file and serve that pleading in accordance with the Federal Rules of Civil Procedure.  But if plaintiffs fail to timely perfect service after that, a renewed motion to dismiss on defective-service grounds under Rule 12(b)(5) might well be appropriate.  Accordingly, defendants' request for "leave to amend" their motion to dismiss to raise this argument will be denied without prejudice.

### D.  <u>Judicial Notice</u>

There is one more procedural issue to cover.  In support of their argument that *res judicata* bars this lawsuit, defendants have submitted a copy of the summons and complaint filed electronically by plaintiffs in the state-court action as well as a copy of the state-court decision that dismissed plaintiffs' state-court action with prejudice.  Ex. A to Schoonmaker Decl., Dkt. No. 10-2 (complaint); Ex. B to Schoonmaker Decl., Dkt. No. 10-3 (decision).

Extraneous materials are often inappropriate to consider on a pre-answer motion to dismiss.  Even so, "[a] court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014).

Defendants' *res judicata* argument easily fits within the contours of this exception.  Plaintiffs' state-court complaint, and the state-court decision that dismissed their state-court action with prejudice, were publicly filed in New York's court filing system.

That makes them the kind of public records that are ordinarily subject to judicial notice.  *See, e.g.*, *Kramer v. Time Warner, Inc.*, 936 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Plaintiffs do not dispute that the prior state-court proceedings identified by defendants occurred.  Nor do they dispute that the state court dismissed their state-court complaint with prejudice.  Instead, plaintiffs offer various reasons why these state-court proceedings should not have claim-preclusive effect on this federal-court action.

Accordingly, the Court will take judicial notice of the state-court records offered by defendants for the purpose of determining whether the doctrine of *res judicata* bars this suit.  *See, e.g.*, *Williams v. N.Y. City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order) (approving of lower court's implicit decision to take judicial notice of state-court filings).

### E. __Res Judicata__

This leads, finally, to the central argument raised by defendants: that the doctrine of *res judicata* bars this federal suit.

"*Res judicata* assures the finality of judgments by precluding a party to a lawsuit from litigating a claim more than once." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995).  "Under the doctrine of *res judicata*, or claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action.'" *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998) (emphasis in original)).[7]

Defendants argue the dismissal of plaintiffs' state-court action has claim-preclusive effect on this federal-court action.  As defendants explain, both suits involve the same parties and allege the same facts; *i.e.*, the July 4, 2021 incident inside the Wal-Mart.  Defs.' Mem. at 5–7.  According to defendants, the dismissal of that state-court action "with prejudice" qualifies as a final judgment on the merits.  *Id.*  And although defendants acknowledge that

---

[7]  Defendants' argument focuses on the question of claim preclusion.  But as a historical matter, *res judicata* is sometimes considered a blanket term that also sweeps in principles of issue preclusion.  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  Issue preclusion, sometimes called collateral estoppel, "'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in a future lawsuit.'"  *Flaherty*, 199 F.3d at 612 (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)).

plaintiffs' state-court complaint did not necessarily assert the same legal claims that are alleged in this federal-court action, defendants argue that they are nevertheless barred because plaintiffs *could have* done so—New York courts are equally competent to hear § 1983 claims. *Id*. at 6–7.

In opposition, plaintiffs contend that *res judicata* does not apply because this action was filed *before* the state-court action was dismissed. Pls.' Opp'n, Dkt. No. 20 at 6–10. Plaintiffs further argue that the state-court action does not qualify as a final judgment on the merits because it was merely dismissed for improper service. *Id*. Even assuming otherwise, plaintiffs argue that the state-court action would not preclude this federal-court lawsuit because the state-court litigation only involved state-law claims. Pls.' Opp'n at 6–10.

In reply, defendants insist that it is irrelevant that this federal action was commenced before the state-court action was terminated by the state-court decision dismissing it with prejudice. Defs.' Reply at 4. Further, defendants argue that the state-court action was not just dismissed on defective-service grounds. *Id*. As they explain, the state-court action was *also* dismissed on statute-of-limitations grounds. *Id*. Thus, in defendants' view, the state-court dismissal is a final judgment on the merits with claim-preclusive effect. *Id*.

New York law determines the claim-preclusive effect of the state-court decision dismissing plaintiffs' state-court complaint. *See, e.g.*, *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019) ("A federal court

must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

Under New York law, *res judicata* "bars successive litigation based upon the 'same transaction or series of connected transactions' if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008) (cleaned up).

The Second Circuit has articulated a more granular version of this same claim-preclusion test: "(1) the earlier decision was a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the same parties or their privies were involved; and (4) the decision involved the same cause of action." *Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 415 (E.D.N.Y. 2010), *aff'd*, 438 F. App'x 31 (2d Cir. 2011) (summary order).

Upon review, the second, third, and fourth elements of this test are easily satisfied. There is no question that the state-court decision was rendered by a court of competent jurisdiction.[8] Plaintiffs' state-court complaint asserted

---

[8] An alternative way to read this element would be to think of it as a jurisdictional inquiry. *See Stone v. Williams*, 970 F.2d 1043, 1057 (2d Cir. 1992) ("[A] court's adjudication is conclusive only if it had power to pass on the merits of the action."). But the jurisdictional question is discussed *infra*.

common-law tort claims.  Those claims can all be heard in Supreme Court, which is a court of general jurisdiction.  N.Y. JUDICIARY LAW § 140-B.  The state-court complaint also alleged that defendants' conduct violated plaintiffs' "constitutional rights."  So this language could be understood as an attempt to assert § 1983 claims as well.  But that would not change the analysis of this element, since state courts are competent to hear § 1983 claims, too.  *See, e.g.*, *Haywood v. Drown*, 556 U.S. 729, 731 (2009).

There is no question that the same parties or their privies were involved in the state-court action.  A comparison of the state-court complaint and the proposed amended pleading filed in this federal-court action confirms that the same named plaintiffs; *i.e.*, Byrd and Edmonds, have filed suit against the same named defendants; *i.e.*, the Town, Officer Buyck, and Officer Spain.

There is no question that the prior decision involved the same cause of action.  New York courts take a "transactional" approach to claim preclusion, under which "the claim preclusion rule extends beyond attempts to relitigate identical claims to all other claims arising out of the same transaction or series of transactions."  *Simmons v. Trans Express Inc.*, 16 F.4th 357, 361 (2d Cir. 2021) (cleaned up).

A comparison of the state-court complaint and the proposed amended complaint filed in this federal-court action confirms that both suits arise out of the same transaction or occurrence; *i.e.*, the incident inside the Wal-Mart

retail store on July 4, 2021.  Thus, because both lawsuits involve the same "transaction" or "common nucleus of operative facts," it does not matter whether plaintiffs' raised in the state-court action all of the different legal claims or causes of action that could have been raised.  *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021).

## 1. **Final Judgment on the Merits**[9]

The only question left to consider is the first element of the test, which asks whether the state-court decision dismissing plaintiffs' state-court complaint "with prejudice" qualifies as a "final judgment on the merits."

This turns out to be an absurdly complex legal question.  As an initial matter, however, it is worth noting that the phrases "final judgment" and "on the merits" are both misnomers.  Today, these phrases are just shorthand ways of describing judicial determinations that carry a preclusive effect on "successive" or "subsequent" litigation.  *Kassenoff v. Kassenoff*, 2023 WL 2648844, at *4 (S.D.N.Y. Mar. 27, 2023) (collecting cases).

That leads to a few questions.  First, does it matter that plaintiffs filed this federal-court action two days *before* the state-court action ended with a "final judgment"; *i.e.*, before that case was dismissed?  In plaintiffs' view, this

---

[9] As noted *supra*, defendants submitted a copy of the March 30, 2023 state-court decision dismissing plaintiffs' state-court complaint with prejudice.  It is unclear if a separate "judgment" was ever entered (or was ever required to be entered under state law), but the parties treat this written opinion as the "judgment," at least for purposes of their dispute over the application of *res judicata*.

case cannot be considered a "successive" or "subsequent" action because the state-court action had not been concluded at the time that this second case was filed.  Pls.' Opp'n at 7.

This argument has some logical appeal.  But under the Restatement of Judgments, "[a] valid and final judgment rendered in one action is conclusive in another action between the parties although the other action was commenced before the rendition of the judgment or before the commencement of the action in which the judgment was entered." *Restatement of Judgments* § 43 (1942).

Consequently, various courts have held that "[w]here parallel actions are commenced, *res judicata* will attach to the action in which a judgment is first entered." *Official Publ'ns, Inc. v. Kable News Co., Inc.*, 811 F. Supp. 143, 146 (S.D.N.Y. 1993); *see also Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*, 922 F.2d 164, 167 (2d Cir. 1991) (relying on full-faith-and-credit principle to give *res judicata* effect to a state-court judgment rendered during pendency of a federal-court proceeding).

To be sure, neither of these cases identify a particular state-law basis on which to reject plaintiffs' argument about timing.  But the rationale of these opinions appears to be sound.  Their reasoning also conforms to the view set out in the *Restatement of Judgments*.  And because New York and federal courts rely on the same essential test for *res judicata*, there is no reason to

think that the New York Court of Appeals would reach a different or contrary result. *Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001). So *res judicata* may operate to bar this federal-court action regardless of the fact that it was filed two days *before* the state-court complaint was dismissed with prejudice.

The second question is whether the state-court decision that dismissed plaintiffs' state-court complaint "with prejudice" qualified as a dismissal "on the merits" under state law. In plaintiffs' view, the state-court decision relied on non-service of a summons and therefore it has no claim-preclusive effect on this federal-court action. Pls.' Opp'n at 8. But according to defendants, the state-court decision *also* dismissed plaintiffs' state-court complaint on timeliness grounds, which does have preclusive effect. Defs.' Reply at 6–8.

A review of the state-court decision offered by defendants indicates that both of these legal issues were raised in defendants' motion to dismiss and considered—albeit in a pretty cursory fashion—by the state court in its dismissal order. Ultimately, the state court granted defendants' unopposed motion and dismissed plaintiffs' state-court complaint "with prejudice."

As defendants correctly argue, the New York Court of Appeals has held that a dismissal on statute-of-limitations grounds can have claim-preclusive effect. *Smith v. Russell Sage College* ("*Russell Sage*"), 54 N.Y.2d 185, 194 (1981) (holding that such a dismissal "is at least sufficiently close to the merits for claim preclusion purposes to bar a second action").

In *Russell Sage*, the New York Court of Appeals emphasized that the prior action being given *res judicata* effect included the consideration of more than just the pleadings. *Id*. But later Appellate Division cases have applied *Russell Sage* without any reference to this qualification, *see, e.g.*, *Sosa v. JP Morgan Chase Bank*, 822 N.Y.S.2d 122, 124 (2d Dep't 2006), and the New York Court of Appeals has never revisited the issue to insist on its inclusion in the claim-preclusion analysis, *Marinelli Assocs. v. Helmsley-Noyes Co., Inc.*, 705 N.Y.S.2d 571, 574 (1st Dep't 2000). So the statute-of-limitations dismissal issued by the state-court appears to qualify as a "merits" decision.

This leads to a final question. The state-court decision does not explicitly say whether the "with prejudice" dismissal was "on the merits." The general rule is that "[a] judgment dismissing a cause of action is not a dismissal on the merits unless it specifies otherwise." N.Y. C.P.L.R. 5013.

But the New York Court of Appeals has also held that "CPLR 5013 does not require that the prior judgment contain the precise words 'on the merits' in order to be given [preclusive] effect; it suffices that it appears from the judgment that the dismissal was on the merits." *Strange v. Montefiore Hosp. & Med. Ctr.*, 59 N.Y.2d 737, 739 (1983).

Instead, the New York Court of Appeals has explained that "[a] dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits,' that is, to bring the action to a final conclusion against

the plaintiff." *Yonkers Contr. Co., Inc. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380 (1999).

In sum, then, the state court's dismissal of plaintiffs' state-court complaint "with prejudice" on statute-of-limitations grounds would appear to qualify as a "final judgment on the merits." Because the other three elements of the test for *res judicata* are also satisfied, the state court's dismissal of plaintiffs' state-court complaint should have claim-preclusive effect on a second suit arising from the same facts, such as this federal-court action.

But there are two wrinkles in this otherwise tidy analysis that require defendants' *res judicata* argument to be denied. First, as plaintiffs point out, the state-court decision dismissing plaintiffs' state-court complaint *also* noted that plaintiffs had failed to serve a summons.

In New York, "the failure to file the initial papers necessary to institute an action constitutes a nonwaivable, jurisdictional defect, rendering the action a nullity." *O'Brien v. Contreras*, 6 N.Y.S.3d 273 (2d Dep't 2015). Although New York's civil rules were amended in 2007 to give trial courts "broad discretion to correct or disregard mistakes, omissions, defects, or irregularities" in an action, *O'Brien*, 6 N.Y.S.3d at 273, the New York Court of Appeals has specifically held that this amendment does not permit the lower courts to disregard the non-service of a summons, *Goldenberg v. Westchester Cnty. Health Care Corp.*, 921 N.Y.S.2d 619 (2011).

New York courts treat non-service of a summons as a defect in their subject matter jurisdiction. *See, e.g.*, *Maddux v. Schur*, 139 A.D.3d 1281 (3d Dep't 2016). And in New York (as elsewhere), a dismissal based solely on a jurisdictional defect is not considered to be "on the merits" and therefore does not have *res judicata* effect. *Kokoletsos v. Semon*, 575 N.Y.S.2d 116 (2d Dep't 1991) (refusing to apply *res judicata* where prior action was dismissed for lack of personal jurisdiction); *Dutcher v. Town of Shandaken*, 470 N.Y.S.2d 767, 769 (3d Dep't 1983) (holding same where prior action was "dismissed solely on jurisdictional grounds").

The problem here is that the state-court decision does not appear to have dismissed plaintiffs' state-court complaint *solely* on the basis of this apparent jurisdictional defect. Instead, the state court also appears to have considered the state-law merits question arising from defendants' statute-of-limitations argument, since it dismissed the state-court complaint "with prejudice."

This was probably legal error. After all, if non-service of a summons is a nonwaivable jurisdictional defect under state law, then the state court almost certainly lacked jurisdiction to entertain the merits. And if the state court lacked jurisdiction to entertain the merits, it certainly lacked authority to enter any kind of binding judgment on the dispute. At best, then, the state court should have dismissed the state-court complaint "without prejudice."

Even so, this issue alone would not necessarily be enough to avoid the application of *res judicata*. "The doctrine of res judicata does not depend on whether the prior judgment was free from error." *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 272 (2d Cir. 1977). And while it might seem strange, the Supreme Court has held that "principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982).

In other words, error or not, it is far from clear that the possible claim-preclusive effect of the state-court decision can be disregarded just because the state court may have wrongly applied its own state law.[10] *Cf. Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (observing *res judicata* applies even if "the judgment may have been wrong or rested on a legal principle subsequently overruled").

As the New York Court of Appeals has explained, "[t]he policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the

---

[10] The place to correct this error (assuming it is actually an error) would likely be in the state court itself. There, plaintiffs could have moved for an order amending the dismissal of their state-court complaint to be "without prejudice." *Cf. Landau v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 13 (2008). If that motion had been denied, plaintiffs might have taken a direct appeal that sought to modify the dismissal order accordingly. *Cf. Stone v. Williams*, 970 F.2d 1043, 1058 (2d Cir. 1992). And before the state-court dismissal was entered against them, plaintiffs could have instead sought to withdraw their complaint without prejudice rather than letting defendants' motion to dismiss go unopposed. *See* N.Y. C.P.L.R. 3217.

controversy has been erroneously decided, whether due to oversight by the parties or error by the courts." *Reilly v. Reid*, 45 N.Y.2d 24, 28 (1978).

But there is a second, even bigger problem here that warrants the denial of defendants' *res judicata* argument. It turns out that the Second Circuit has already spilled a lot of ink on the question of whether a New York court's dismissal on statute-of-limitations grounds precludes a party from bringing the same claim in another jurisdiction with a longer statute of limitations.

In *Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda*, 572 F.3d 93 (2d Cir. 2009), the plaintiffs were a group of real estate developers who sought to challenge the validity of a special tax assessment levied against them by the local municipality. *Id*. at 94. The plaintiffs initially filed suit in New York state court alleging, *inter alia*, a violation of procedural due process. *Id*. But the state court dismissed their suit as untimely after concluding that a short, four-month state-law limitations period applied to their state-law claims. *Id*.

Thereafter, the plaintiffs filed a § 1983 action in federal court. *Cloverleaf Realty of N.Y., Inc.*, 572 F.3d at 94. Although this federal-court suit alleged an "essentially identical" procedural due process claim, the plaintiffs "sought to take advantage of the longer statute of limitations applied by federal courts to § 1983 actions." *Id*. But the federal district court soon dismissed their second suit on the pleadings too, "concluding that the federal court claim was precluded by the earlier state court dismissal." *Id*.

The plaintiffs took an appeal, where they argued that the district court had failed to apply an exception to claim preclusion that arises when the first claim is dismissed "solely for lack of timeliness" and the "second claim is brought in another state or jurisdiction."  *Cloverleaf Realty of N.Y., Inc.*, 572 F.3d at 95.

As relevant here, the Second Circuit agreed with the plaintiffs that the state court's dismissal of their state-court complaint on timeliness grounds did not have claim-preclusive effect on the federal-court action with the longer statute of limitations.  *Cloverleaf Realty of N.Y., Inc.*, 572 F.3d at 95.

As the *Cloverleaf* panel explained, "the traditional rule is that expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods." *Cloverleaf Realty of N.Y., Inc.*, 572 F.3d at 95 (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 504 (2001)).

In jurisdictions that follow this so-called "traditional rule," a dismissal on timeliness grounds does not have claim-preclusive effect because it does not extinguish the underlying right.  *Cloverleaf Realty of N.Y., Inc.*, 572 F.3d at 95.  The *Cloverleaf* panel concluded that New York follows this "traditional rule"; *i.e.*, a dismissal on timeliness grounds does not have claim-preclusive effect in another jurisdiction, such as federal court.  *Id.*

Remember *Russell Sage*, the New York Court of Appeals opinion about statute-of-limitations dismissals discussed *supra*?  In reaching its conclusion that New York followed the "traditional rule" on timeliness dismissals, the *Cloverleaf* panel acknowledged that *Russell Sage* stood for an apparently contrary result.  *Id*.  Indeed, *Cloverleaf* noted that the Second Circuit had previously read *Russell Sage* to establish the exact opposite proposition: that a dismissal on timeliness grounds actually carried claim-preclusive effect in other jurisdictions.  *Id*. at 96 (citing two published Second Circuit opinions).

Even so, *Cloverleaf* declined to follow *Russell Sage*.  Instead, the *Cloverleaf* panel characterized the holding from *Russell Sage* as "ambiguous," and chose instead to rely on a different decision from the New York Court of Appeals: a case called *Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48 (1999).  According to the *Cloverleaf* panel, the *Tanges* case supported their view that New York followed the "traditional rule" on statute-of-limitations dismissals.  *Id*.

*Cloverleaf*'s conclusion makes a lot of sense.  As noted *supra*, in giving the statute-of-limitations dismissal claim-preclusive effect in *Russell Sage*, the New York Court of Appeals seemed to qualify its holding as relying in some part on the fact that the prior action there had been dismissed on something other than merely the pleadings.  And *Tanges*, which was decided by the New York Court of Appeals after *Russell Sage*, does not even mention *Russell Sage* at all.  Instead, *Tanges* contains a short-and-sweet recitation of the so-called

"traditional rule" for dismissals on limitations grounds: they merely bar the remedy without extinguishing the underlying right.  93 N.Y.2d at 55.  So it is no surprise that *Cloverleaf* would choose to rely on it.

But that is not the end of the story.  Two years later, the Second Circuit expressed doubt about *Cloverleaf*'s treatment of the state-law decisions in *Russell Sage* and *Tanges*.  In *Joseph v. Anthanasopoulos*, 648 F.3d 58, 67 (2d Cir. 2011), a different panel of the Circuit noted that although *Cloverleaf* had sidestepped the holding in *Russell Sage* and chosen instead to rely on *Tanges*, not a single New York court had followed *Cloverleaf*'s lead.  *Id.*  Instead, the state courts had continued to invoke *Russell Sage* to give claim-preclusive effect to state-court dismissals on limitations grounds.  *Id.* at 67 & n.9 (collecting cases).

The Second Circuit tried to clarify this issue by certifying the question to the New York Court of Appeals.  *Joseph*, 648 F.3d at 68.  But the New York Court of Appeals eventually declined to consider the certified question after the appellant in the federal case withdrew the appeal.  *Stapleton v. N.Y. City Dep't of Educ.*, 2023 WL 6163939, at *6 (S.D.N.Y. Sept. 6, 2023) (explaining history); *King v. N.Y. City Emps.' Ret. Sys.*, 595 F. App'x 10, 11–12 (2d Cir. 2014) (summary order) (same).

In short, this issue remains unsettled.  *Cloverleaf*'s holding rests on a clear statement about the "traditional rule" set out in *Tanges*.  But state-court

decisions continue to rely on *Russell Sage* instead.  And although this is technically a state-law issue, *Cloverleaf* is a published panel opinion of the Second Circuit.  So if it controls then *res judicata* cannot apply.  To that point, some lower federal courts have chosen to follow *Cloverleaf* despite the fact that state courts apparently do not.  *See, e.g.*, *King v. N.Y. City Emps.' Ret. Sys.*, 2015 WL 4718004, at *22 (E.D.N.Y. Aug. 10, 2015) (following *Cloverleaf* on remand despite noting the uncertainty set out in *Joseph*).  Others have just declined to wade into this area of law in the first place.  *Stapleton*, 2023 WL 6163939, at *6.

The upshot to this discussion is that defendants' motion to dismiss on the basis of *res judicata* must be denied.  Neither party briefed or even flagged this vexatious line of Second Circuit authority, and the Court is not prepared to wade any farther into this swamp on its own.  After all, New York courts have routinely cautioned that a dismissal "with prejudice" does not always mean that *res judicata* should attach.  *State of New York Mortg. Agency v. Massarelli*, 89 N.Y.S.3d 768 (3d Dep't 2018).

In sum, given the absence of a sufficiently clear legal reason to conclude otherwise, and in light of the fact that a jurisdictional defect was involved in the first action, the state court's dismissal of plaintiffs' state-court complaint does not have claim-preclusive effect on this federal-court action.

### F. __Municipal Liability under § 1983__

Beyond their central claim-preclusion argument, defendants' motion to dismiss also raises a few arguments that go to the merits of the § 1983 claims alleged in the proposed amended complaint.  First, defendants argue that the § 1983 municipal-liability claim against the Town (Count Eight) must be dismissed because the proposed amended complaint fails to plausibly allege a policy or custom attributable to the municipality.  Defs.' Reply at 12–13.

Section 1983 "creates a species of tort liability."  *Heck v. Humphrey*, 512 U.S. 477, 483 (1994).  But unlike state law, § 1983 does not permit liability based on a theory of *respondeat superior*; *i.e.*, a government entity cannot be held liable under § 1983 just because it employed the tortfeasor.  *Monell v. Dept' of Soc. Servs.*, 436 U.S. 658 (1978).  Instead, "local governments are responsible only for 'their *own* illegal acts.'"  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

Under *Monell* and its progeny, "the agent's actions must implement rather than frustrate the government's policy."  *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992).  As the Supreme Court has explained, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."  *Connick*, 563 U.S. at 60 (quoting *Monell*, 436 U.S. at 691).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking

officials, and practices so persistent and widespread as to actually have the force of law." *Connick*, 563 U.S. at 60.

This "official policy" requirement "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality." *Pembaur*, 475 U.S. at 479. Stated differently, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

Measured against this general body of law, plaintiffs' proposed amended complaint fails to plausibly allege a § 1983 municipal-liability claim against the Town. In opposition to dismissal of this claim, plaintiffs correctly point out that they have alleged that the Assistant District Attorney assigned to prosecute the underlying state-court criminal proceedings against plaintiffs failed or refused to disclose Officer Buyck or Officer Spain's personnel files despite being required to do so under New York State's criminal procedure law. Proposed Am. Compl. ¶ 61. In plaintiffs' view, this factual allegation "provides a fair inference" that the undisclosed personnel files "contain prior incidents of similar misconduct" that "would have required corrective behavior or training." Pls.' Reply, Dkt. No. 31 at 5.

But that conclusion hardly follows from the facts alleged in the proposed amended complaint. "The policy or custom need not be memorialized in a

specific rule or regulation," *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996), "may be pronounced or tacit," *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011), and "reflected in either action or inaction," *id*. So whether it is formal or informal, or express or implied, the plaintiff must still plausibly allege the existence of a policy or custom (or its equivalent).

Plaintiffs have not done so. As an initial matter, the proposed amended complaint only plausibly ties this alleged non-disclosure to an Assistant District Attorney, who is not a Town employee at all. Even putting that issue aside, though, plaintiffs have not alleged that Officer Buyck or Officer Spain had any supervisory or policymaking authority. Nor have plaintiffs alleged a pattern of false arrests, excessive force, or malicious prosecutions, either by these particular officers or by any other Town employees. Instead, plaintiffs have alleged a single incident that occurred on July 4, 2021.

This does not satisfy the demanding standard imposed by *Monell* and its progeny. An isolated constitutional violation by non-policymaking employees is almost never enough to hold a municipal defendant liable under § 1983. To do so on these facts would be tantamount to approving the kind of *respondeat superior* liability under § 1983 that the Supreme Court has rejected since

*Monell*.  Accordingly, plaintiffs' § 1983 municipal-liability claim against the Town (Count Eight) must be dismissed.[11]

## G.  Duplicative or Untimely

Second, defendants argue that many of the remaining claims asserted in plaintiffs' proposed amended pleading are either duplicative or untimely.

### 1.  Timeliness

To the extent that plaintiffs' proposed amended complaint re-asserts any state-law claims, defendants argue that those claims are time-barred by the applicable statute of limitations.  In opposition, plaintiffs insist that they have not attempted to re-plead any state-law claims that were asserted in their state-court complaint.  Pls.' Opp'n at 8–9.  Because the Court accepts plaintiffs' representation and construes plaintiffs' proposed pleading to assert only § 1983 claims (that are subject to a longer, three-year statute of limitations), defendants' motion to dismiss on this ground will be denied.

### 2.  Duplicity

Finally, defendants argue that the proposed amended complaint asserts duplicative claims based on the same alleged constitutional violations.  As noted *supra*, plaintiffs' proposed amended complaints contains eight counts

---

[11]  In Count Seven, the proposed amended complaint also purports to assert a § 1983 claim directly against the Town for malicious prosecution.  But as explained in this section, the only way to pursue a § 1983 claim against a municipality is to satisfy *Monell*'s requirements.  To the extent plaintiffs intended to attempt such a feat with Count Seven, they have not done so.  Accordingly, any such § 1983 claim against the Town also fails.

(minus the *Monell* claim(s) against the Town that must be dismissed for the reasons explained elsewhere).

In particular, plaintiffs' proposed amended complaint asserts § 1983 claims against Officer Buyck and Officer Spain for unlawful seizure (Count One), excessive force (Count Two), false arrest (Count Three), false imprisonment (Count Four), assault (Count Five), battery (Count Six), and malicious prosecution (Count Seven).

Defendants argue that these seven enumerated claims substantively amount to just three different constitutional violations: (A) unreasonable seizure, (B) excessive force, and (C) malicious prosecution. Defs.' Reply at 10. In opposition, plaintiffs argue that defendants engaged in multiple unlawful acts and insist that a single set of facts "can violate even a single Amendment in different ways." Pls.' Reply at 3.

Upon review, some of plaintiffs' claims will be dismissed as duplicative in order to streamline this litigation. To be sure, it is common for a civil rights plaintiff to bring certain claims together. For instance, plaintiffs often assert claims for "false arrest" and "false imprisonment."

But a "false arrest" is just a kind of "false imprisonment"—the intentional, unprivileged confinement of another by someone acting with law enforcement authority. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (1995). So courts

typically treat these two claims the same when they are brought against a law enforcement officer.

The same is true when a plaintiff brings claims for "excessive force" and "assault" and "battery."  Because these claims are "substantially identical," *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991), courts typically lump them together for purposes of analysis, *Shaheed v. City of N.Y.*, 287 F. Supp. 3d at 438, 453 (S.D.N.Y. 2018).

Even so, it is sometimes helpful to leave these claims as separate causes of action in a pleading.  For example, it can serve as a useful reminder that a plaintiff has brought state-law claims as well.  *Cf. Ferguson v. City of N.Y.*, 2018 WL 3626427, at *2 (E.D.N.Y. July 30, 2018) ("[U]nder New York law, any use of force by a police officer outside the context of a lawful seizure or arrest . . . is a technical assault or battery.").

But those concerns are inapplicable here.  As discussed *supra*, plaintiffs have abandoned any state-law claims, which would be subject to dismissal on statute-of-limitations grounds anyway.  And although plaintiffs insist there is no "rule requiring a plaintiff to do so," even they acknowledge that the seven different § 1983 claims they have alleged "might have been joined and stated in fewer Causes of Action."  Pls.' Opp'n at 10.  In short, because plaintiffs have asserted identical § 1983 claims as multiple causes of action, leave to amend to assert these claims will only be granted in part.

In particular, plaintiffs' claims for unreasonable seizure (Count Two) and false imprisonment (Count Three) will be dismissed as duplicative of a § 1983 claim for false arrest (Count One).  Plaintiffs' claims for assault (Count Five) and battery (Count Six) will also be dismissed as duplicative of their § 1983 claim for excessive force (Count Two).  Plaintiffs' § 1983 claim for malicious prosecution (Count Seven) will be left undisturbed except for its dismissal against the Town.[12]

Although these claims will be dismissed, defendants are cautioned that plaintiffs will remain able to pursue discovery into the underlying factual allegations asserted in these otherwise-duplicative claims.  Accordingly, the motion to dismiss on this ground will be granted in part in denied in part.

## V.  **CONCLUSION**

The state-court action does not appear to have claim-preclusive effect on this federal-court lawsuit.  Although plaintiffs' § 1983 *Monell* claim(s) against the Town must be dismissed, plaintiffs have plausibly alleged § 1983 claims against Officer Buyck and Officer Spain for false arrest, excessive force, and malicious prosecution.

Therefore, it is

---

[12]  Defendants have moved to dismiss this claim based on plaintiffs' failure to allege a sufficient post-arraignment seizure.  Defs.' Reply at 11–12.  But as plaintiffs point out, they have alleged that they were subjected to legal process following an arraignment.  Pls.' Reply at 4.  This is sufficient to plausibly allege the requisite post-arraignment "seizure" necessary to satisfy § 1983.  *Wagner v. Hyra*, 518 F. Supp. 3d 613, 638 (N.D.N.Y. 2021).

ORDERED that

1.  Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2.  Plaintiffs' cross-motion to amend is GRANTED in part and DENIED in part;

3.  Plaintiffs' proposed amended complaint is ACCEPTED FOR FILING as the operative pleading in this action;

4.  The Clerk of the Court is directed to TERMINATE as a defendant the Town of DeWitt Police Department;

5.  Plaintiffs' § 1983 municipal-liability claim (Count Eight) against the Town of DeWitt is DISMISSED;

6.  The Clerk of the Court is directed to TERMINATE as a defendant the Town of DeWitt;

7.  Plaintiffs' 1983 claims for unreasonable seizure (Count Two) and false imprisonment (Count Three) are DISMISSED as duplicative of the § 1983 claim for false arrest (Count One);

8.  Plaintiffs' § 1983 claims for assault (Count Five) and battery (Count Six) are DISMISSED as duplicative of the § 1983 claim for excessive force (Count Two);

9.  Plaintiffs' § 1983 claims for false arrest (Count One), excessive force (Count Two), and malicious prosecution (Count Seven) remain for discovery against defendants Officer Buyck and Officer Spain;

10.  Plaintiffs shall file and serve the amended complaint in accordance with the Federal Rules of Civil Procedure on or before October 13, 2023; and

11.  Defendants Officer Buyck and Officer Spain shall file and serve a responsive pleading on or before October 27, 2023.

The Clerk of the Court is directed to terminate the pending motions.

IT IS SO ORDERED.


Dated:  October 5, 2023
        Utica, New York.

David N. Hurd
U.S. District Judge